# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BENJAMIN WOOD, *individually and on* | | |
| *behalf of all others similarly situated,* | * | |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | |
| | | Civil No. 23-01363-BAH |
| BLUE DIAMOND GROWERS, | * | |
| | | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Before the Court is Blue Diamond Grower's ("BDG" or "Defendant") Motion to Dismiss,

ECF 17,[1] Plaintiff's Third Amended Complaint, ECF 14.[2]  Plaintiff,[3] a purchaser of Defendant's

Smokehouse Almonds (hereinafter the "Almonds," or the "Nuts"[4]), seeks class certification and

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] Defendant elected to proceed with the Third Amended Complaint after initially attempting to submit a Fourth Amended Complaint.  ECF 30 (paperless order indicating Third Amended Complaint is operative for the present motion); *see also* ECFs 26–29 (regarding the parties' initial dispute as to whether Plaintiff was entitled to submit a Fourth Amended Complaint as of right).

[3] Plaintiff's Complaint identifies Benjamin Wood as the lead Plaintiff in the purported class.  *See* ECF 14 ¶ 49.  On the docket, however, two additional plaintiffs are listed, Andrea Bury and Kathy Parkinson.  As Plaintiff's complaint refers to a singular Plaintiff and it appears Plaintiff included the additional plaintiffs as members of a class, *see* ECF 14, at 11, the Court will evaluate only the identified plaintiff's claims in the pleadings.

[4] While it may be surprising to some, almonds are not technically "nuts."  Caitlin Bard, *Cashews and almonds aren't technically nuts.  So what are they?*, McGill Off. of Sci. & Soc. (July 10, 2020),    https://www.mcgill.ca/oss/article/nutrition-did-you-know/cashews-and-almonds-arent-technically-nuts-so-what-are-they (noting that botanically, almonds are "not true nuts, but are rather classified as 'drupes[,]' [which] are fruits that are fleshy on the outside and contain a shell covering a seed on the inside").  Nevertheless, the Court will use the term nut in the colloquial sense.

asserts that BDG misrepresented that the Almonds were produced in a smokehouse, when the smokey flavor, in fact, was the result of natural liquid smoke.  ECF 14 ⁋ 37.  Plaintiff brings two claims against BDG.  First, Plaintiff brings a claim for breach of an express warranty, based on the alleged misrepresentations on the Almonds' labeling.  Plaintiff's second claim arises under the Maryland Consumer Protection Act ("MCPA") and is based on the same alleged misrepresentation.  ECF 14, at 11–14.

The Court has reviewed all relevant filings, including Defendant's memorandum in support of Defendant's motion, ECF 18, Plaintiff's response, ECF 33, and Defendant's reply, ECF 36, and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, Defendant's motion to dismiss is GRANTED.

## I.  BACKGROUND

Plaintiff Benjamin Wood brings the present action alleging the Defendant engaged in misleading practices by advertising "smokehouse" almonds to consumers that were, in fact, not produced in a smokehouse.  ECF 14 (Third Amended Complaint) ⁋ 37 (displaying ingredients of Defendant's almonds with emphasis on the "natural hickory smoke flavor").

 

*Id.* ⁋ 1 (displaying the packaging of the product).  Plaintiff alleges he bought the Almonds "on one or more occasions within the statutes of limitations for each cause of action alleged, at grocery stores, convenience stores, big box stores, delis and/or gas stations in Harford County, Maryland, between 2021 and May 2023, and/or among other times."   ECF 14 ⁋ 56.  Because of the "smokehouse" labeling, Plaintiff alleges he paid more (*i.e.*, a premium) than he otherwise would have and that he paid more for this product as compared to other similar products without the mislabeling.  *Id.* ⁋ 59 (indicating the Almonds were priced "higher than similar products, [that were] represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions").

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction.  "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction."  *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)).  "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted."  *See also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").  In considering a motion under this rule, courts discount legal conclusions

stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, claims of fraud, such as one under the MCPA, require greater specificity and a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Spaulding v. Wells Fargo Bank*, 920 F. Supp. 2d 614, 622 (D. Md. 2012) (applying Rule 9(b) to MCPA claim), *aff'd*, 714 F.3d 769 (4th Cir. 2013); *Allen v. CitiMortgage, Inc.*, Civ. No. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011) ("These 'circumstances' include 'the time, place, and contents of . . . false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999))). In this case, Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6). ECF 17.

## III.   DISCUSSION

This is the seventh successive case filed against Blue Diamond Growers regarding its "Smokehouse®" Almonds, and this is the sixth district court to rule upon the same issue. *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021); *Clark v. Blue Diamond Growers*, Civ. No. 22-1591, 2023 WL 4351464 (N.D. Ill. July 5, 2023); *Cummings v. Blue Diamond Growers*, Civ No. 22-141, 2023 WL 3487005 (N.D. Fla. May 15, 2023); *Muller v. Blue Diamond Growers*, Civ. No. 22-707, 2023 WL 4579241 (E.D. Mo. July 18, 2023); and *Zapadinsky v. Blue Diamond Growers*, Civ. No. 23-231, 2023 WL 5116507 (E.D. Wis. Aug. 7, 2023); *Rhodes*

*v. Blue Diamond Growers*, Civ. No. 23-01012, 2023 WL 9326166 (N.D. Ala. filed Nov. 15, 2023) (motion to dismiss pending).

Of the five prior courts that have ruled on dispositive motions in cases with identical claims (the "Smokehouse Almond Cases"), four have dismissed the plaintiffs' claims either at the motion to dismiss stage or at the summary judgment stage. *Colpitts*, 2023 WL 2752161, at *3–5 (summary judgment stage); *Cummings*, 2023 WL 3487005, at *3–7 (motion to dismiss stage); *Muller*, 2023 WL 4579241, at *2, *5–8 (motion to dismiss stage); *Zapadinsky*, 2023 WL 5116507, at *3–11 (motion to dismiss stage). *But see Clark*, 2023 WL 4351464, at *4–9 (dismissing express warranty claim due to lack of notice while declining to dismiss plaintiff's Illinois Consumer Fraud and Deceptive Practices Claim).

This Court becomes the fifth to dismiss such a suit.  For the reasons below, the Court finds that Plaintiff has failed to state a plausible claim for a breach of an express warranty due to noncompliance with statutory notice requirements, and that Plaintiff has failed to adequately allege a violation of the MCPA.  Before reaching the merits of Plaintiff's allegations, the Court begins with Defendant's argument that Plaintiff lacks standing to bring the present suit.

### A.    Article III Standing

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit.  *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007).  To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  Here, Defendant asserts that Plaintiff has failed to assert the first element, injury in fact.  ECF 18, at 28–30.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  "Similar to a review of a complaint for failure to state a claim, courts 'must accept as true all material allegations of the complaint and must construe the complaint in favor' of plaintiffs when determining whether plaintiffs have standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 21-269, 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (hereinafter "*In re Gerber*") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  "The threshold, however, to demonstrate standing is lower than that required to state a claim." *Id.* (citing *Ross v. Bank of Am.*, 524 F.3d 217, 222 (2d Cir. 2008)); *see also Buscemi v. Bell*, 964 F.3d 252, 266 (4th Cir. 2020) (finding injury in fact for Article III standing but dismissing for failure to state a claim).

Defendant argues that Plaintiff has failed to allege an adequate injury for two reasons: (1) Plaintiff has not alleged that the Almonds Plaintiff purchased were defective or did not work as advertised, ECF 18, at 28; and (2) Plaintiff's repeated purchases of the Almonds indicates the Nuts were not valueless. *Id.* at 29.  Plaintiff counters that Plaintiff does not need to allege the Almonds were defective or failed to work to properly allege an injury because Plaintiff articulated a price premium theory of injury.  ECF 33, at 17–18.

In asserting that there is a requirement that a plaintiff plead a "defective" product to allege an injury in the context of consumable goods, Defendant points to *Valiente v. Publix Super Markets., Inc.*, Civ. No. 22-22930, 2023 WL 3620538 (S.D. Fla. May 24, 2023) and *Ramirez v. Kraft Heinz Foods Co.*, Civ. No. 22-23782, 2023 WL 4788012 (S.D. Fla. Jul. 27, 2023).  ECF 18, at 28–29.  In *Valiente*, the District Court for the Southern District of Florida held that a plaintiff's "price premium" allegation regarding alleged overpayments on honey-lemon lozenges, alone, did not establish standing.  2023 WL 3620538, at *2–3.  However, Plaintiff distinguishes *Valiente*

because there, the honey-lemon lozenges were secured by an unconditional money-back guarantee, which mooted any economic injury.  ECF 33, at 18 (citing *Valiente*, 2023 WL 3620538, at *3).[5]

In *Ramirez*, the plaintiff continued to purchase the allegedly deceptive product despite knowing that the product, a microwaveable, single-serving cup of macaroni and cheese that purported to be ready in three-and-a-half minutes, was not ready for consumption in that time. 2023 WL 4788012, at *3.  Plaintiff argues this case is distinguishable as there is no indication Plaintiff continued to purchase the product after discovering the alleged misrepresentation, whereas in *Ramirez*, the plaintiff conceded to purchasing the product numerous times.  ECF 33, at 18.

The Court agrees with Plaintiff that there are material differences between *Valiente* and *Ramirez* and the present case.  Notably, in both *Ramirez* and *Valiente*, district courts in Florida considered claims for violations of the Florida Deceptive and Unfair Trade Practices Act, with the benefit of authoritative and persuasive intra-circuit caselaw from the Eleventh Circuit where plaintiffs in similar circumstances were found to lack standing.  *Ramirez*, 2023 WL 4788012, at *3; *Valiente*, 2023 WL 3620538, at *4 (collecting cases).  Here, in considering an alleged violation of the Maryland Consumer Protection Act without the benefit of extensive intra-circuit precedent on the injury requirement for standing in the context of consumable goods with allegations of

---

[5] Defendant counters that this case is still instructive because the *Valiente* Court held in the alternative that Plaintiff's complaint still failed to adequately allege standing.  ECF 36, at 18 (citing 2023 WL 3620538, at *3).  The *Valiente* Court held in the alternative that a plaintiff simply stating he would not have bought the product had he known of the alleged misrepresentation is insufficient to establish injury-in-fact in the standing analysis.  2023 WL 3620538, at *3.

misrepresentations on labels, *Valiente* and *Ramirez* do little to move the needle in favor of Defendant.[6]

Second, Defendant's argument that Plaintiff's potentially repeated purchases of the product indicate that the product was not "worthless" does not persuade because it is not clear that Plaintiff did, in fact, purchase the product numerous times. *See* ECF 14 ¶ 56 ("Plaintiff purchased the Product on *one or more occasions* . . . ."). It is also not clear when Plaintiff learned of the alleged misrepresentation/deception, and whether he purchased the Nuts subsequently. More importantly, it goes too far to require a Plaintiff to plead that a product was utterly worthless merely to open the court doors to deceptive mislabeling claims. Such a rule would risk keeping out most of such cases.

Ultimately, the Court agrees that Plaintiff is not required to plead that the Almonds are deficient to allege a price premium theory for purposes of standing. When a consumer relies upon the accuracy of label and "is deceived by misrepresentations into making a purchase, . . . the consumer has purchased a product that he or she *paid more* for than he or she otherwise might

---

[6] Both parties discuss *In re Gerber*, an unpublished case from the United States District Court for the Eastern District of Virginia. ECF 33, at 18–20; ECF 36, at 17–19; *see also In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 21-269, 2022 WL 10197651, at *6 n.10 (E.D. Va. Oct. 17, 2022). There the district court held a plaintiff who purchased Gerber baby products and later discovered that such products contained traces of heavy metals failed to allege an economic injury-in-fact based on a variety of theories. *Id.* Notably, the *In re Gerber* Court did not engage in a substantive analysis of the "would not have purchased" theory on its own. *See id.* (conflating the "would not have purchased" theory of economic damages with the other recognized theories of economic damages). The *In re Gerber* Court relied heavily on Third, Eighth, Ninth, and Eleventh Circuit precedents in coming to this conclusion, given the dearth of Fourth Circuit caselaw in this context. *Id.* at *5–10. The district court's overview of such caselaw is helpful, and the analysis is cogent and compelling. This Court simply comes to a different conclusion. Given the low bar standing ought to present to litigants bringing claims, and given that this is a very close call, the Court errs on the side of finding standing exists, until the Fourth Circuit weighs in on this topic.

have been willing to pay if the product had been labeled accurately." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011) (emphasis in original). "This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent."[7]  *Id.*

The Court finds *Kwikset Corp.* more instructive than *Valiente* and *Ramirez*, as the plaintiff there alleged a misrepresentation—not in the product's flavor or function—but as to the product's manufacturing.  *See id.* at 892.  In that case, plaintiffs alleged they purchased locksets "because they were 'Made in U.S.A.'; they would not have purchased them otherwise."  *Id.*  The Court held "it may be inferred[] [plaintiffs] value what they actually received less than either the money they parted with or working locksets that actually were made in the United States."  *Id.*  The *Kwikset Corp.* Court found this was sufficient to establish that plaintiffs alleged an injury for purposes of standing.  *Id.*

Additionally, three of the five district courts that have ruled on motions in the Smokehouse Almond Cases have found those plaintiffs' identical allegations sufficient to establish standing. *See Colpitts*, 527 F. Supp. 3d at 575 ("Defendant's challenge to standing fails . . . [as] an allegation

---

[7] In eschewing a requirement of worthlessness or defect to establish injury-in-fact, the *Kwikset Corp.* Court stated:

> A counterfeit Rolex might be proven to tell the time as accurately as a genuine Rolex and in other ways be functionally equivalent, but we do not doubt the consumer (as well as the company that was deprived of a sale) has been economically harmed by the substitution in a manner sufficient to create standing to sue.  Two wines might to almost any palate taste indistinguishable—but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay.  Non-kosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless.

*Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011).

that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."); *Cummings*, 2023 WL 3487005, *2 ("Cummings alleges facts showing that smoked almonds are worth more than unsmoked almonds with liquid smoke flavoring . . . .  He then alleges that he thus paid a premium for the "Smokehouse" almonds.  At this stage, that economic injury is enough." (internal citation omitted)); *Clark*, 2023 WL 4351464, at *2 (holding the plaintiff had sufficiently alleged "that she didn't get what she paid for—namely, that she did not get almonds flavored in an actual smokehouse—which suffices to demonstrate an injury").

One court in the Smokehouse Almond Cases found a plaintiff lacked standing, in *Zapadinsky v. Blue Diamond Growers*.  2023 WL 5116507, at *4.  There, the court noted that the defendant was not challenging the facial sufficiency of the complaint, but rather submitted external facts—specifically, that the prices of BDG's Smokehouse Almonds matched their other flavors— that called the court's jurisdiction into question.  *Id.*  Here, Defendant has also raised the same argument and has asked this Court to consider the factual declarations in the Smokehouse Almond Cases where discovery was completed in resolving whether there is jurisdiction.  ECF 36, at 17. Plaintiff argues that doing so would be improper when analyzing a motion to dismiss, as the Court is confined to the pleadings.  ECF 33, at 18–20.

The *Cummings* Court addressed the same standing arguments as Plaintiff presents here and held that where the standing issue is "inextricably intertwined with the merits," 2023 WL 3487005, at *2 (citation omitted), "the preferred procedure" is to defer the factual disputes until "a consideration of the merits."  *Id.* (quoting *Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979)).

Additionally, the Court is hesitant to take judicial notice of the factual findings made in earlier cases, as Defendant requests, ECF 36, at 20, to resolve a factual dispute under Rule 12(b)(1) because prices of consumer goods fluctuate over time, across different states, and even across different stores. Without knowing precisely when or where Plaintiff purchased the allegedly deceptive Nuts, it would be improper to close the courthouse doors to Plaintiff on this basis alone. The Court thus interprets Defendant as raising only a facial challenge to Plaintiff's standing and will not accept as true the factual findings made by other courts in the Smokehouse Almond Cases for purposes of addressing jurisdiction.

Ultimately, "[a]s the party seeking to invoke federal jurisdiction, Plaintiff[] bear[s] the burden of establishing standing." *In re Gerber*, 2022 WL 10197651, at *4 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc.*, 578 U.S. at 338. The Court finds Plaintiff has done so, if only barely, by alleging Plaintiff would not have purchased the Nuts had Plaintiff known they were not produced in a smokehouse.

### B.      Failure to State a Claim

While Plaintiff's allegations of injury may be sufficient to open the courthouse doors to Plaintiff's claims, the allegations fail to take Plaintiff any farther. Both of Plaintiff's claims, a breach of express warranty claim (Count I) and a violation of the MCPA (Count II), fail for the reasons that follow.

#### 1.      Breach of Express Warranty

Breaches of express warranties are governed by Title Two of the Commercial Law Article of the Maryland Annotated Code. *See* Md. Code Ann., Com. Law ("C.L.") § 2-313 (stating that express warranties are created by "[a]ny description of the goods which is made part of the basis of the bargain"). Defendant constitutes a seller of goods, and Plaintiff constitutes a buyer. *See*

C.L. § 2-103(1)(d) ("'Seller' means a person who sells or contracts to sell goods."); *id.* § 2-103(1)(a) ("'Buyer' means a person who buys or contracts to buy goods."). Plaintiff's purchase of the Almonds and lack of rejection of the goods constituted an acceptance. *Id.* § 2-606 ("Acceptance of goods occurs when the buyer . . . [f]ails to make an effective rejection, . . . [after] the buyer has had a reasonable opportunity to inspect them" (citation omitted)). Where the good has been accepted, "[t]he buyer must within a reasonable time after he discovered any breach notify the seller of breach or be barred from any remedy." C.L. § 2-607(3)(a); *see also id.* § 2-607(4) ("The burden is on the buyer to establish any breach with respect to the goods accepted.").

Plaintiff concedes that he accepted the goods and failed to provide notice of the product's alleged defect prior to filing this lawsuit. ECF 33, at 21–22; ECF 36, at 16. The parties dispute only whether the filing of the present lawsuit may constitute "notice," sufficient to satisfy the notification requirement imposed by C.L. § 2-607. Plaintiff asserts various statutory interpretation arguments to persuade this Court not to recognize Maryland precedent imposing a prohibition against lawsuits serving as "notice" under C.L. § 2-607. *See* ECF 33, at 21 (arguing the statute does not say a lawsuit *cannot* satisfy the notice requirement); *id.* at 21–22 (arguing C.L. § 2-607 was modeled off U.C.C. § 2-607, which also does not expressly prohibit lawsuits constituting notice).

However, the Supreme Court of Maryland has held that "the institution of an action . . . cannot by itself be regarded as a notice of the breach under . . . 2-607(3)." *Lynx, Inc. v. Ordnance Prod.*, 327 A.2d 502, 514 (Md. 1974); *accord Beautiful Home Textiles v. Burlington Coat Factory*, Civ. No. 13-1725, 2014 WL 4054240, at *12 (S.D.N.Y. Aug. 15, 2014) (citing *Lynx*, 327 A.2d at 514 and holding that "[c]ourts have routinely held that service of a complaint does not satisfy the notice requirement"). In other words, notice is a condition precedent to suit. *Lynx, Inc.*, 327 A.2d

at 514 ("Since the existence of a right of action is conditioned upon whether notification has been given the seller by the buyer, where no notice has been given prior to the institution of the action [,] an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.'").  This makes sense when one "purpose of the notice requirement . . . [is] to inform the seller of a defect in the product, thus enabling him to correct the defect, if possible, and to minimize any damages." *Mattos, Inc. v. Hash*, 368 A.2d 993, 996 (Md. 1977).  The Court, applying Maryland law,[8] is bound to apply that precedent and holds Plaintiff's express warranty claim is barred for failing to provide pre-suit notice.

Because the Court grants Defendant's motion to dismiss Plaintiff's express warranty claim on noncompliance with the notice requirements of C.L. § 2-607, the Court need not reach Defendant's other claims that Plaintiff failed to plausibly allege a false statement, injury, causation, or privity.  *See* ECF 18, at 25–28.  Defendant's motion to dismiss Count I is granted.

### 2.    MCPA Violation

While Plaintiff's allegation that he "would not have purchased" the Nuts had he known they were not smoked in a smokehouse may barely satisfy a standing analysis, this allegation is insufficient to plead a plausible claim for relief under the MCPA.  "To bring an action under the MCPA, the plaintiff must allege '(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury.'"  *Daniyan v. Viridian Energy LLC*, Civ. No. GLR-14-2715, 2015 WL 4031752, at *1 (D. Md. June 30, 2015) (alteration in *Daniyan*) (quoting *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 205 (D. Md. 2012)).

---

[8] "A federal court sitting in diversity applies the substantive law of the state in which it sits." *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004)).

Additionally, actions under the MCPA implicate fraud and, therefore, higher levels of particularity are required in a plaintiff's pleadings.  *See* ECF 33, at 10 (conceding as such).  Rule 9(b) is a heightened pleading standard requiring a pleader to state "with particularity the circumstances constituting fraud."  *Compare* Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."), *with* Fed. R. Civ. P. Rule 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. . . .").  Having reviewed the allegations in Plaintiff's Third Amended Complaint, the Court concludes Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading standard in alleging a violation of the MCPA.

Plaintiff argues he has satisfied the Rule 9(b) standard because he identified the "who, what, where, when, and how" of the purported fraud.  *See* ECF 33, at 10.  As Defendant puts it, the "who" was "Blue Diamond Growers."  ECF 33, at 10 (quoting ECF 14 ¶ 50).  The "what" was that "its almonds [were] promoted as 'made in a smokehouse.'"[9]  *Id.* (quoting ECF 14 ¶ 1).  The "how," according to Plaintiff, "was by using 'NATURAL HICKORY SMOKE FLAVOR' to try and make the almonds taste like they were made in a smokehouse, even though they were not." *Id.* (quoting ECF 14 ¶ 38).

Even if these allegations were sufficiently particular, Plaintiff has failed to state the "where" and "when" of the disputed transactions with particularity.  Defendant states only that Plaintiff purchased the nuts "on one or more occasions within the applicable statute of limitations

---

[9] The Court construes this characterization of the Almond's label as a legal conclusion, that is not awarded deference.  *Iqbal*, 556 U.S. at 678.  The Almonds were labeled in large prominent text with the word "Smokehouse" in the location BDG's flavors normally were located.  *See* ECF 14 ¶ 1 (displaying photograph of the label).  The label does not state that the Almonds were "made in a smokehouse," as Plaintiff characterizes.  *Id.*; ECF 33, at 10.

for each cause of action alleged, at grocery stores, convenience stores, big box stores, delis and/or gas stations in Harford County, Maryland, between 2021 and May 2023." *Id.* (quoting ECF ¶ 56). This is insufficient to meet Rule 9(b)'s particularity standard. Indeed, it is unlikely to satisfy Rule 8's more lenient standard.

For instance, the number of times Plaintiff purchased the product is relevant to Plaintiff's injury claim. *When* the Plaintiff first read the ingredient panel, *whether* the Plaintiff discontinued purchasing the Nuts, and *where* Plaintiff purchased them are all critically important facts to Plaintiff's claim. Plaintiff does not even indicate whether the Nuts are comparably priced to competitor nuts that are produced via the smokehouse process. *See generally* ECF 14 ¶ 59 (comparing the price of the BDG's almonds only to other non-smokehouse almonds, not to competitors with nuts that were, in fact, produced in a smokehouse).

The Court must conclude that the facts surrounding the Plaintiff's actual purchasing of the Almonds are too general and imprecise to warrant continuation of the case to discovery. As Plaintiff does not state specifically when or where he purchased the Almonds, and as Plaintiff has failed to allege particular facts regarding the price premium theory of injuries, Plaintiff's mere conclusory statements that BDG misrepresented its Almonds are insufficient to survive a motion to dismiss for a claim of fraud under Rule 9(b)'s pleading standard.

In sum, Plaintiff's MCPA claims falter where they begin, as the allegations in Plaintiff's Third Amended Complaint are too vague and speculative to comply with Rule 9(b)'s particularity requirement. Plaintiff's Count II is dismissed.

### C.    Manner of Dismissal

Defendant requests that Counts I and II be dismissed with prejudice. ECF 18, at 30. "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the

discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (quoting *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)). Generally, a plaintiff should "be given a chance to amend his complaint . . . before the action is dismissed with prejudice." *Id.* at 825–26 (quoting *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674–75 (S.D. Tex. 2010)). However, "dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim." *Id.* at 826 (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

As to Count I, dismissal with prejudice is appropriate because Plaintiff failed to provide pre-suit notice to Defendant and is barred from seeking any remedy for the alleged breach of an express warranty in the complaint. *See supra* Section III.B.1. There is no set of facts that would remedy that deficiency.

As to Count II, it is a closer question. On the one hand, it is theoretically possible that Plaintiff could refile his complaint with additional factual details that may satisfy the particularity requirement of Rule 9(b). However, the Court takes judicial notice that this is the seventh duplicative action brought against BDM, by the same Plaintiff's counsel, based on the same level of general factual allegations, and which the majority of courts have dismissed. *Compare Colpitts,* 527 F. Supp. 3d at 584 (permitting plaintiff to proceed past the motion to dismiss stage), *granting motion for summary judgment*, Civ. No. 20-2487, 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023) (noting "Defendant is plainly correct that Plaintiff has produced no evidence showing that he suffered an actual injury"),[10] *and Cummings*, 2023 WL 3487005, at *3 (granting motion to

---

[10] Specifically, the *Colpitts* Court said:

> [T]he Complaint does . . . allege that he paid such a [price] premium. . . . Plaintiff
> has produced no evidence, however, to substantiate these allegations. He has not
> substantiated his allegation that he personally paid a premium for the Smokehouse

dismiss and, while noting plaintiff had standing, finding "Smokehouse" was not deceptive as a matter of law), *and Muller*, 2023 WL 4579241, at *8 (finding standing but granting motion to dismiss because no reasonable consumer would be deceived by the product's packaging and not reaching the issue of injuries), *and Zapadinsky*, 2023 WL 5116507, at *3–8 (granting motion to dismiss on the basis of standing because plaintiff failed to allege a cognizable injury), *with Clark*, 2023 WL 4351464, at *5 (permitting plaintiff's Illinois Consumer Fraud and Deceptive Practices Claim ("ICFA") to survive a motion to dismiss, though focusing solely on whether "Smokehouse" was a misrepresentation and failing to consider whether plaintiff's alleged injury satisfied the element of "actual damages" under the ICFA claim).

The Court finds that additional litigation of this matter is futile, based on publicly available filings in other cases and the extent of the rejection of Plaintiff's counsel's nearly identical allegations in other courts. Three years into the Smokehouse Almond Case litigation, after conducting discovery in connection to a different yet identical suit, Plaintiff's counsel's failure to allege sufficient facts to support nearly identical claims indicates additional amendment is futile. Allowing Plaintiff to try a fifth time to remedy glaring deficiencies would be, in a nutshell, fruitless. The facts do not exist to support Plaintiff's claim, and it would be a waste of judicial resources to pretend that they may. The Court must exercise its discretion to stymie the relitigation of the same issues *ad infinitum*. Additionally, though Defendant requested that all Plaintiff's

---

Almonds, since he has produced no evidence as to the price he paid for them on any occasion when he purchased them. And he has not substantiated his allegation that reasonable consumers are willing to pay a higher price for the Smokehouse Almonds due to their alleged mislabeling, since the record contains no evidence whatsoever as to how the source of smoky flavoring affects the market price of flavored foods.

2023 WL 2752161, at *4.

claims be dismissed with prejudice, Plaintiff offered no counterarguments on this point. Therefore, Plaintiff's complaint is dismissed in its entirety with prejudice.

Finally, as the Court dismisses Plaintiff's claims with prejudice, Plaintiff's request for class certification is moot. ECF 14, at 11.

## IV.   CONCLUSION

In sum, the Court finds Plaintiff has established standing to sue; however, Plaintiff's complaint fails to state a claim for relief. Plaintiff's complaint is **DISMISSED with prejudice**.


Dated: <u>March 6, 2024</u>                    <u>          /s/          </u>
                                      Brendan A. Hurson
                                      United States District Judge

18